Laurence W. Stinson
STINSON LAW GROUP, P.C.
421 W. Mendenhall
Bozeman, Montana 59715
406.587.2179
Email:  laurence@stinsonlawyers.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| MOONRISE PARTNERS, LLC, a Wyoming Company, | Civil Action No. _____ |
| Plaintiff, | |
| vs. | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| MAGGIE ANDERSON, in her official capacity as Chair of the MADISON ADDITION ARCHITECTURAL COMMITTEE, and the MADISON ARCHITECTURAL COMMITTEE | |
| Defendants. | |

**COMES NOW** Plaintiff, by and through its counsel, Stinson Law Group, P.C., and for its causes of action against Defendants, does state and allege as follows:

## I.  Jurisdiction and Venue.

1.    Plaintiff is a resident of Wyoming.  The members of Plaintiff do not reside in, and are not citizens of, Montana.

2.    Upon information and belief, Defendant Anderson was, at all times relevant, a citizen and resident of Gallatin, County Montana.

3. Defendant Madison Addition Architectural Committee (herein "MAAC") is organized by and through The Protective Covenants of the Madison Addition to the City of West Yellowstone (Amended and Restated), Section 8, and conducts business in Gallatin County, Montana.

3. The Chair of Defendant MAAC is Defendant Anderson, who is named in her official capacity.

5. At all times relevant, the events and circumstances giving rise to the disagreement between the parties occurred in or near the Town of West Yellowstone, Gallatin County, Montana.

6. This Court has jurisdiction over the parties and controversy pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C §2201, as Plaintiff is an interested party seeking declarations of its rights and other legal outcomes as against Defendant, and the parties are citizens of different states.

## II.  Facts Common to All Causes of Action.

7. Plaintiff incorporates all prior allegations herein.

8. In 1982 the Town of West Yellowstone (TOWY) in Gallatin County zoned certain real property as zoned R-4.  This same real property is owned by Plaintiff (herein the "Moonrise Property").  The R-4 Zoning allows 20 residential units per acre which means 436 units are allowed to be built on the Moonrise Property.

9. Plaintiff is developing the Moonrise Property into timeshare residences. This development is called "Moonrise."

10. In January of 2019, Plaintiff was advised by the TOWY that Moonrise would need two separate ingress and egress points.

11. On February 28, 2019 Plaintiff's representatives met with Defendants to discuss a 180 unit version of the Moonrise development.

12. At that meeting, Plaintiff's representatives met with Defendant Anderson and all individuals that comprise the entirety of Defendant MAAC.

13. Defendants only objection in February 2019 to Moonrise was a setback that was less than 25 feet on a single lot which would be a new corner lot given the new road access. Plaintiff agreed to increase the set-back.

12. To be clear, at the February 2019 meeting Plaintiff had mapped the identical two, proposed ingress and egress points – to one of which Defendants now objects. These ingress and egress points appear on the attached *Exhibit 1, Moonrise map*.

13. Plaintiff's intended use of the property as timeshares is pre-approved by a Development Agreement executed by the TOWY and applicable to the real property upon which Moonrise will be built. See *Exhibit 2*, Development Agreement, incorporated herein by reference.

14. Pursuant to local rule, Plaintiff previously sought a permit from the Town of West Yellowstone (herein "TOWY"), a local governmental body, for Moonrise. Plaintiff now seeks a Zoning Permit for the timeshare application.

15. The TOWY commercial zoning process requires approval from Defendant Madison Architectural Committee as part of a completed zoning permit application. See *Exhibit 3*, TOWY Zoning Permit Process, incorporated herein by reference.

16. Plaintiff sought the approval of Moonrise by Defendants.

17. Plaintiff submitted its application for approval to Defendants on January 16, 2020. On February 6, 2020, Defendants declined to approve Moonrise and provided reasons for the denial, one of which was development of the road entrance through Lots 1 and 2 on Block 2 in R-2 Zoning.

18. On or about February 21, 2020 Plaintiff responded to Defendants and provided answers and explanations to the matters Defendants raised in the denial. Including an explanation that the TOWY would require two points of ingress and egress to the property as previously discussed.

19. Plaintiff asked Defendants to provide an approval by March 11, 2020.

20. Defendants chose not to provide an approval or any response whatsoever by March 11, 2020. Having not received any response by March 13, 2020, Plaintiff, via counsel, wrote Defendants and asked for an approval or an explanation of why an approval was not given. Plaintiff asked for a response by March 18, 2020. Plaintiff explained that delay in approval was causing delay which would, in turn, cause economic harm to it.

21. Defendants retained counsel but still refused to timely respond until Plaintiff indicated it would seek legal relief if Defendants chose not to provide an approval or other response.

22. On April 8, 2020 Defendants finally responded that an approval could not be given because the R-2 Zoning did not allow for new roads and road construction. Defendants also expressed concerns about traffic. Defendants chose not to offer solutions or address the fact that, as was already known, the TOWY would

require two locations for egress and ingress and the usage was preapproved by the Development Agreement.

23. On April 10, 2020 Plaintiff responded to Defendants pointing out that:

- The Defendants' objection to a new road entrance is that the R-2 designation does not allow for roads but the R designation categories (R-1, R-2, R-3, R-4) guide development usage of unimproved property and do not, and are not intended to, address road building.
- Roads are incidental and necessary uses to serve residents.
- Plaintiff's position is easily demonstrable by looking at Grouse Court, Washburn Court, and Washburn Road; adjoining and previously undeveloped land in an R designation developed to include roads – just as is being proposed in Moonrise.

24. As the issue objected to by Defendants addressed, Plaintiff asked that Defendants provide an approval or a proposed solution by the close of business on April 13, 2020.

25. Defendant responded but stood by its claim that that approval could not be given because of the second road access and refused to acknowledge R-4 zoning allowed roads as a necessary and incidental use and did not issue an approval.

26. Because Defendants previously consented to the same ingress and egress points, its objection now is pretextual and designed to delay Moonrise and cause economic harm to Plaintiff.

### III.  DECLARATORY JUDGMENT

27. The Plaintiff realleges each and every allegation previously set forth in this Complaint as if set forth herein in full.

28. Plaintiff seeks a declaratory ruling that:

a. The Protective Covenants of the Madison Addition to the City of West Yellowstone (Amended and Restated), Section 8, define the outer limits of the authority of Defendants in regards to Moonrise. See *Exhibit 3*, Protective Covenants of the Madison Addition to the City of West Yellowstone (Amended and Restated).

b. Pursuant to the Protective Covenants of the Madison Addition to the City of West Yellowstone (Amended and Restated), Section 8, Defendants are not authorized to review roads of a development and approve or deny the same.

c. Defendants denial of Moonrise because of road development or traffic is improper and ultimately unlawful;

d. The scope of review authority, if any, of Moonrise by Defendants is limited to design and colors per Montana law and the Protective Covenants of the Madison Addition to the City of West Yellowstone (Amended and Restated);

e. The Development Agreement, *Exhibit 2*, has preapproved the proposed timeshare of Moonrise and is valid;

f. Defendants' delay in responding was unreasonable and needless and caused delay in Plaintiff's approval process for Moonrise;

g. Defendants objection is unreasonable and without merit; and

h. Under Montana Law, section 8.12 of the Protective Covenants of the Madison Addition to the City of West Yellowstone (Amended and Restated) is null and void.

29.  Plaintiff further seeks an order that its Moonrise development plan should be approved by Defendants.

30.  Plaintiff further seeks an order that it is entitled to injunctive relief enjoining Defendants from issuing denial(s) of Moonrise.

31.  Plaintiff further seeks an order that it is entitled to its attorney fees from Defendants.

## IV. Prayer for Relief

**WHEREFORE**, Plaintiff prays this Court for judgment in its favor and against Defendants as outlined in paragraphs 22-31 above and for such other and further relief as the Court deems equitable and just.

DATED this 14th day of April, 2020.

**Stinson Law Group, P.C.**


By: /s/ Laurence W. Stinson
**Laurence W. Stinson**
421 Mendenhall Avenue
Bozeman, Montana 59715
406.587.2179
Attorneys for Plaintiff