IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| MOONRISE PARTNERS, LLC, a Wyoming Company,<br><br>      Plaintiff,<br><br>vs.<br><br>MAGGIE ANDERSON, in her official capacity as Chair of the MADISON ARCHITECHTURAL COMMITTEE, and the MADISON ARCHITECHTURAL COMMITTEE,<br><br>      Defendants. | CV 20-16-BU-BMM<br><br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Moonrise Partners, LLC ("Moonrise") filed a Complaint against the Madison Addition Architectural Committee ("MAAC"), seeking a declaratory judgment related to a zoning permit dispute between the parties. Doc. 1. Moonrise filed a Second Amended Complaint on September 23, 2020. Doc. 23. Moonrise filed a Motion for Partial Summary Judgment, in which it seeks summary judgment on six issues. Doc. 25. The Court held a hearing on this motion on December 18, 2020. Doc. 35.

1

**BACKGROUND.**

The Madison Addition is a large residential development in the Town of West Yellowstone ("West Yellowstone"). West Yellowstone, a small community adjacent to Yellowstone National Park, began planning for its expansion in the 1980s. West Yellowstone implemented its first zoning ordinances in 1982. Development of the Madison Addition began shortly afterwards. West Yellowstone executed a Development Agreement with the original developer of the Madison Addition to memorialize the development's general scheme. Doc. 32-1.

Moonrise owns two adjacent portions of the Madison Addition—Tract 1 and the Lots 1 & 2 of Block 2. Doc. 26 at 5. Moonrise originally sought to build timeshares on Tract 1. West Yellowstone would not issue zoning permits unless Moonrise provided Tract 1 with additional points of ingress and egress. *Id*. at 7. Moonrise now seeks to build timeshares on Tract 1 and roads on Lots 1 & 2 of Block 2 to provide Tract 1 with additional points of ingress and egress. *Id*. at 5.

West Yellowstone requires developers seeking zoning permits to provide an approval letter from the relevant homeowner's association. Doc. 32-9 at 1. In this case, Moonrise needed an approval letter from MAAC. Moonrise submitted its application to MAAC on January 16, 2020. Doc. 23 at 5. MAAC provided Moonrise a rejection letter on February 6, 2020. *Id*. The parties exchanged communications

over the subsequent months, but MAAC remained resolute in its position. *See e.g.*, Doc. 26-5.

Moonrise filed this lawsuit on April 14, 2020, seeking a declaratory judgment that West Yellowstone cannot delegate to a private committee its responsibility to review development plans for compliance with zoning ordinances.  Doc. 1.  Moonrise sidestepped MAAC and submitted a zoning permit application (without an approval letter from MAAC) to West Yellowstone on August 21, 2020.  Doc. 26-1 at 6.  The record indicates that West Yellowstone has not responded.

**LEGAL STANDARD.**

Under the Federal Rules of Civil Procedure, the Court shall grant a party's motion for summary judgment if the summary judgment record shows that: (1) there is no genuine dispute, (2) as to any material fact, and (3) the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine dispute exists when a rationale factfinder, considering the evidence in the summary judgment record, could find in favor of the nonmoving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).  A fact is material if it might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Judgment is appropriate as a matter of law when the moving party should prevail because the non-moving party has failed to make an adequate showing on an essential element of its case, as to which

3

that party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The mere fact that the moving party's summary judgment record is uncontested proves insufficient to warrant summary judgment. *Edwards v. Aguillard*, 482 U.S. 578, 595 (1987).

**ANALYSIS.**

Moonrise has failed to satisfy the burden for summary judgment under Rule 56(a). *See* Fed. R. Civ. Pro. 56(a). Moonrise's Motion for Partial Summary Judgment (Doc. 25) is denied.

1. **The scope of the review and approval authority of Defendant Madison Addition Architectural Committee with regard to any building, improvement or construction within the Madison Addition are limited to the architectural provisions of the Protective Covenants of the Madison Addition to the City of West Yellowstone (Amended and Restates).**

Moonrise has failed to satisfy the standard for summary judgment under Rule 56(a) because there remains a genuine question regarding the scope of MAAC's authority under the Protective Covenants. *See Ricci*, 557 U.S. at 586. Section 8.7 of the Protective Covenants vests MAAC with "***the power, authority, standing and right to enforce these covenants*** in any court of law or equity when it reasonably believes the same have been violated." Doc. 32-4 at 13 (emphasis added). This

grant of authority does not include any language that limits MAAC's authority to certain provisions of the Protective Covenants.

Section 8.11 of the Protective Covenants makes this point even clearer by requiring that MAAC ensures that the development plans under consideration are "in full compliance with ***all of the terms and provisions of these covenants***." *Id*. at 14 (emphasis added). A reasonable factfinder could find that Section 8.7, in the absence of language limiting "these covenants," empowers MAAC to review development plans for compliance with all of the provisions of the Protective Covenants. *See Ricci*, 557 U.S. at 586.

The Protective Covenants include more provisions than simply architectural provisions. For example, Section 2.2 of the Protective Covenants requires MAAC to ensure that all plans to develop property comply with the use-districts in which a property reside. Doc. 32-4 at 7−8. The Protective Covenants implement land-use limitations through classifications called use-districts that articulate the various requirements and limitations for developing the properties within the Madison Addition.

Sections 3−6 of the Protective Covenants detail the different use-districts. Section 3, for example, limits development of properties in R-1 use-districts to the following uses: (1) accessory usage; (2) home occupation; (3) newly constructed one-family dwellings; and, (4) temporary buildings for and during construction only.

*Id*. at 8. These provisions do not include architectural restrictions, but Section 2.2 nonetheless requires MAAC to ensure that development plans comply with them. *Id*. at 7−8.

It proves unnecessary at this point in the litigation to attempt to define the exact scope of MAAC's authority under the Protective Covenants. It suffices that a rationale factfinder could find that the Protective Covenants empower MAAC with the more authority than just review of the architectural provisions of the Protective Covenants. *See Ricci*, 557 U.S. at 586. The full scope of MAAC's authority under the Protective Covenants remains undetermined at this point. *Ricci*, 557 U.S. at 586. Moonrise's Motion for Partial Summary Judgment (Doc. 25), as it relates to this issue, is denied.

2. **Defendant MAAC lacks legal authority to adjudicate or decide whether residential lots within the Madison Addition can be converted into a roadway to serve the community.**

Moonrise has failed to satisfy the standard for summary judgment under Rule 56(a) because Moonrise has failed to demonstrate that MAAC lacks any legal authority to adjudicate or decide whether residential lots within the Madison Addition can be converted into a roadway. Moonrise has also failed to demonstrate the summary judgment record entitles Moonrise to judgment on this issue as a matter of law. *See Celotex Corp.*, 477 U.S. at 323.

As an initial matter, the Court treats the Protective Covenants as a contract through which the private landowners of the Madison Addition agreed to implement various limitations on their properties. *See generally Creveling v. Ingold*, 132 P.3d 322, 325−26 (Mont. 2006). The landowners have empowered MAAC, via § 8.7 of the Protective Covenants, to enforce the terms of the Protective Covenants on their behalf in any court of law or equity. Doc. 32-4 at 13. Section 8.7 states that MAAC "shall have the power, authority, standing, and right to enforce these covenants in any court of law or equity when it reasonably believes the same have been violated." *Id*. at 13. Necessarily implied in this "reasonable belief" standard must be the authority for MAAC to adjudicate or decide for itself whether development plans under its consideration comply with the provisions of the Protective Covenants. Moonrise has provided no legal authority to doubt or invalidate this contractual arrangement.

In light of the language in the Protective Covenants that empowers MAAC to enforce the Protective Covenants on behalf of the landowners, the Court must look to the specific provisions of the Protective Covenants to address the narrow issue of whether MAAC possesses the authority to adjudicate or decide whether residential lots can be converted into roadways. Section 2.2 of the Protective Covenants requires that "[n]o . . . land shall hereafter be used . . . unless it is in conformity with all of the regulations herein specified for the district in which it is located." *Id*. at 7.

7

Section 2.2 makes it clear that the Protective Covenants require MAAC to determine whether plans to develop property comply with the use-districts in which a property resides. A reasonable fact finder could find that Section 2.2 of the Protective Covenant requires MAAC to determine whether building roads on a particular property complies with the use-districts of that particular property.

Furthermore, when MAAC reasonably believes that a plan to develop a property violates the Protective Covenants, Section 8.7 of the Protective Covenants empowers and requires that MAAC litigate those violations in any court of law or equity. *Id*. at 13. Moonrise has failed to satisfy the standard for summary judgment under Rule 56(a). *See Ricci*, 557 U.S. at 586; *Celotex Corp.*, 477 U.S. at 323. Moonrise's Motion for Partial Summary Judgment (Doc. 25), as it relates to this issue, is denied.

3. **Determinations regarding placement of roads and permitted uses within the applicable zoning districts within the Madison Addition fall within the non-delegable duties of the Town of West Yellowstone.**

A great disconnect exists between the parties in this case regarding the exact subject matter of the review that West Yellowstone requires from MAAC. Moonrise argues that West Yellowstone requires MAAC to review development plans for compliance with the zoning ordinances enacted by West Yellowstone. *See generally* Doc. 26. MAAC argues that West Yellowstone requires MAAC to review

development plans for compliance with the Protective Covenants. *See generally* Doc. 31. The summary judgment record does not make it clear who has the proper understanding.

The "Zoning Permit Process" that West Yellowstone provides proves ambiguous. Doc. 32-9. West Yellowstone requires that "a completed zoning application shall contain the following items: . . . (d) Approval Letter from the Madison Addition Homeowner's Association or the Grizzly Park Architectural Committee if applicable." Doc. 32-9 at 1. West Yellowstone provides no descriptions or details regarding what an approval letter shall contain.

At this point, nothing in the summary judgment record indicates that West Yellowstone requires MAAC to review development plans for compliance with the zoning ordinances enacted by West Yellowstone. Moonrise has submitted their application for zoning permits to West Yellowstone without an approval letter from MAAC. West Yellowstone has not rejected Moonrise's application for lack of an approval letter. Granting summary judgment as the record exists would prove improper. *See generally Texas v. United States*, 523 U.S. 296 (1998).

A rationale factfinder could find, based on the summary judgment record, that West Yellowstone only requires MAAC to development plans for compliance with the Protective Covenants. *See Ricci*, 557 U.S. at 586. A genuine dispute exists regarding the subject matter of review that West Yellowstone requires MAAC to

perform. *Id*. Moonrise's Motion for Partial Summary Judgment (Doc. 25), as it relates to this issue, is denied.

**4. The Town of West Yellowstone already has determined, via its December 9, 1982 Development Agreement, that "time-share" units fall within the definition of a residential use for the purposes of the Zoning Plan for the Madison Addition.**

Moonrise has failed to satisfy the standard for summary judgment under Rule 56(a) because Moonrise failed to demonstrate that West Yellowstone already has determined, via the 1982 Development Agreement, that residential uses include timeshares.

Moonrise relies on Section 6 of the Development Agreement. Doc. 32-1 at 3. Section 6 of the Development Agreement proves unambiguous. Section 6 states that the "[d]eveloper agrees that the Zoning Plan is for residential development, and that the term 'residential' specifically includes units commonly known as 'time-share' units." *Id*. MAAC does not contest the content or the validity of the Development Agreement. MAAC instead challenges the relevancy of the Development Agreement. *Id*. at 4−11. Specifically, MAAC argues the Development Agreement does not bind MAAC or the landowners because they were not a party to the Development Agreement. *Id*.

The summary judgment record alone does not warrant summary judgment. Section 6 states that original developer of the Madison Addition intended to include

timeshares under residential uses. Doc. 32-4 at 10. The Development Agreement makes no mention of West Yellowstone's position regarding timeshares as residential uses. The Development Agreement also provides West Yellowstone with vast latitude to adopt zoning ordinances after enacting the Development Agreement. Section 1 of the Development Agreement states that "[West Yellowstone] may impose additional requirements on final plats for any portion of said land consistent with the general scheme of development shown on the Zoning Plan." Doc. 32-1 at 2. The only limitation on West Yellowstone's freedom to adopt new zoning ordinances requires that new zoning ordinances stay consistent with the general scheme of development. *Id*.

The summary judgment record indicates that West Yellowstone has changed the zoning classification for Moonrise's property several times since the Development Agreement was enacted nearly four decades ago. Doc. 31 at 4−5. West Yellowstone's current zoning ordinances make no determination whether residential uses include timeshares; in fact, West Yellowstone's zoning ordinances make no mention of timeshares at all. *Id*. at 8−9. Serious questions remain whether the Development Agreement has any bearing on whether West Yellowstone currently considers residential use includes timeshares. *See Ricci*, 557 U.S. 568. A genuine dispute exists regarding West Yellowstone's position on whether residential

uses allow for timeshares. *See id*. Moonrise's Motion for Partial Summary Judgment (Doc. 25), as it relates to this issue, is denied.

5. **That the determination in ¶ 4, supra, comports with the applicable provisions of the Protective Covenants of the Madison Addition to the City of West Yellowstone (Amended and Restated) and the West Yellowstone Code.**

Moonrise has failed to satisfy the standard for summary judgment under Rule 56(a) that the record entitles Moonrise to judgment as a matter of law that the Protective Covenants, when viewed in the light most favorable to MAAC, consider timeshares as a residential use. *See Ricci*, 557 U.S. at 586. The Protective Covenants designate Tract 1 as an R-4 use-district. Doc. 31 at 6. Section 6.1 of the Protective Covenants states "[t]he intent of [R-4] is to provide for the development of medium density apartments. The district should provide for a variety of housing types to serve the varied housing needs of area residents." Doc. 32-4 at 10. MAAC argued that timeshares conflict with the intent to serve area residents because timeshares are temporary housing, more akin to hotels, that serve travelers, visitors, and guests of West Yellowstone, rather than area residents.

Section 6.2 outlines the permitted uses in R-4 use-districts. *Id*. Those uses include the following: (1) Apartments; (2) Clinics, Hospitals and Nursing Homes; (3) Efficiency Units; (4) Uses permitted in the R-1, R-2, and R-3 districts; and, (5) Private Clubs. Section 1 of the Protective Covenants defines each of these uses. *Id*.

at 3−7 (specifically §§ 1.3, 1.10, 1.22, 1.34, and 1.43). Section 1.42 of the Protective Covenants defines timeshares. *Id*. at 7. Given that Section 6.2 specifically outlines the defined uses allowable in R-4 use-districts, and that timeshares are separately defined but excluded from Section 6.2, it remains unclear whether the Protective Covenants intended to allow developers to construct timeshares in R-4 use-districts. *See Ricci*, 557 U.S. at 586. A genuine dispute exists regarding whether the Protective Covenants consider timeshares as residential. *See id*. Moonrise's Motion for Partial Summary Judgment (Doc. 25), as it relates to this issue, is denied.

6. **MAAC has waived any other objections it may have had regarding the Moonrise Meadows project, per its correspondence denying project approval because of roads and timeshare apartments.**

As an initial matter, when viewed in the light most favorable to MAAC, the summary judgment record indicates that MAAC relied on more than simply "roads and timeshare apartments." MAAC articulated the rationale behind its rejection in its February 6, 2020 rejection letter. Doc. 32-6 at 1. According to that letter, MAAC rejected Moonrise's application for the following reasons: (1) the general nature of Moonrise's plan, including timeshares, leasing office, and public area, are "not compatible and is not in keeping with neighborhood uniformity and aesthetic as the Madison Addition has been developed"; (2) building roads on Lots 1 and 2 constitutes "a violation of zoning and covenants"; (3) the purpose of the various non-

residential buildings proposed facilitate a commercial use as a timeshare venture; and commercial use, timeshare, (private club operated primarily for profit) is not permitted under the Protective Covenants; (4) the plans were not drawn or stamped by an architect and are not adequate for review. *Id*. The rejection letter makes clear that MAAC relied on more grounds than "roads and timeshare apartments." Moreover, Moonrise presents no legal authority whatsoever for the proposition that MAAC waives objections not brought during an initial review.

The summary judgment record indicates that zoning applications tend to incorporate a back-and-forth cooperation between the various parties. In the "Zoning Permit Process," West Yellowstone states "[f]or residential applications, the Code Enforcement Officer will review these applications. . . . If not complete or not in conformance, the Code Enforcement Officer will work with the applicant to achieve compliance with all Town regulations and codes." Doc. 32-9 at 1. West Yellowstone follows a general, back-and-forth process for issuing zoning permits in the "commercial zoning permit application process." *Id*. at 4.

For example, the first phase of the process requires developers to submit a complete zoning permit application. *Id*. The chart indicates that when developers fail to meet this burden, whatever it might ultimately be, those developers may resubmit their amended application to West Yellowstone for reconsideration. The same process applies for engineering review, development review group, and

planning board review. *Id*. Moonrise presents no legal authority that this approach would not or could not be the case with MAAC.

A genuine dispute exists regarding the rationale behind MAAC's decision to reject Moonrise's application. *See Ricci*, 557 U.S. at 586. Moonrise has failed to demonstrate that the summary judgment record entitles Moonrise to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 323. Moonrise's Motion for Partial Summary Judgment (Doc. 25), as it relates to this issue, is denied.

**IT IS HEREBY ORDERED**:

Plaintiff Moonrise's Motion for Partial Summary Judgment (Doc. 25) is **DENIED**.

Dated the 11th day of January, 2021.

Brian Morris, Chief District Judge
United States District Court